MICHIGAN BANK, NATIONAL ASSOCIATION *v.*
WILLIAM J. KAHLICH, INC.

1. EQUITY—CONSTRUCTIVE TRUST.

A constructive trust is a remedial device that arises by operation of law and is not based upon the parties' intention but is imposed to prevent one of the parties from being unjustly enriched at the expense of the other.

2. PLEADING—REMEDY—MISNOMER.

The trial court did not err in ignoring the misnomer in defendant guarantor's pleadings asking for imposition of a constructive trust upon a borrower's checking account funds in plaintiff bank where defendant guarantor was clearly relying upon an express oral agreement with the bank whereby it would not honor the borrower's checks without the guarantor's countersignature.

3. CONTRACTS—TERMS—INTEGRATION—PAROL EVIDENCE—ADMISSIBILITY.

A writing that has been adopted as a complete integration of the terms of a contract may not be varied by evidence of negotiations or of understandings that preceded its adoption; however, this rule applies only to the extent that the parties

---

REFERENCES FOR POINTS IN HEADNOTES

[1]  54 Am Jur, Trusts § 218.
[2]  54 Am Jur, Trusts § 599.
[3–5]  30 Am Jur 2d, Evidence § 1043 *et seq.*
    Parol evidence rule as applied to written guaranty.    33 ALR2d 960.
[6]  11 Am Jur 2d, Bills and Notes § 201 *et seq.*

have adopted that writing as a *complete* integration of their agreement, and therefore it does not apply to a partially integrated agreement in which the contracting parties have reduced some provisions to written form and left others unwritten, trusting their oral expression.

4. CONTRACTS—GUARANTY—PAROL EVIDENCE—ADMISSIBILITY.

The principle that parol evidence is admissible to show a separate agreement when the writing relied on represents a partial, not a complete, integration of the entire agreement is applicable to contracts of guaranty as well as to other contracts.

5. GUARANTY—CONTRACTS—TERMS—PAROL EVIDENCE—ADMISSIBILITY.

Parol evidence is admissible to show the circumstances under which a contract of guaranty was made where the question of whether a written guaranty had been adopted by the parties as a complete integration of their agreement can not be resolved without hearing their testimony; consequently, defendant guarantor's testimony was admissible to show that plaintiff bank had agreed not to honor the borrower's checks without the guarantor's countersignature.

6. GUARANTY — CONTRACTS — BORROWER'S ACCOUNT — GUARANTOR'S COUNTERSIGNATURE — DEPLETION OF ASSETS — BANK LIABILITY.

A provision in a contract of guaranty that plaintiff bank's failure to preserve any right which it might have in, or to, any collateral security of the borrower would not be a defense available to the guarantor, did not relieve plaintiff bank of its responsibility for paying funds from the borrower's checking account without defendant guarantor's countersignature in violation of the parties' express oral agreement, where plaintiff bank did not show that the borrower's checking account funds were collateral security for the borrower's indebtedness and the guarantor's defense was based upon the bank permitting an unauthorized depletion of the borrower's checking account, not upon the bank's failure to preserve rights in collateral.

Appeal from Wayne, Neal E. Fitzgerald, J. Submitted Division 1 April 15, 1970, at Detroit. (Docket No. 7,572.)  Decided April 29, 1970.

Complaint by Michigan Bank, National Association, against William J. Kahlich, Inc., Craig Holland, William J. Kahlich, Communications Affiliates, Inc., Mrs. William J. Kahlich, J. Walter Thompson Company, Inc., Holland Associates, Inc., and Webster Advertising Artists, Ltd., for money due on a promissory note. Plaintiff's motion for summary judgment against Craig Holland denied. Plaintiff appeals on leave granted. Affirmed.

*Radner & Radner* (*Stephen Shefman,* of counsel), for plaintiff.

*Beitner, Mitoff & Glasier,* for defendant Craig Holland.

Before: T. M. BURNS, P. J., and LEVIN and DAVIDSON,* JJ.

LEVIN, J. The question presented in this action by a bank against a guarantor of payment of a promissory note is whether the parol evidence rule bars testimony that the bank agreed that it would not honor any check drawn on the borrower's checking account with the bank unless it was countersigned by the guarantor.

The bank commenced this action on a $12,000 promissory note signed by one of the defendants, William J. Kahlich, Inc., the borrower. Also named as defendants were Craig Holland and William J. Kahlich who signed a separate written guaranty of payment. The bank obtained a judgment against the borrower for the entire indebtedness, and partial payment reduced the balance owing to $9,665.10.

The bank then moved for summary judgment against Craig Holland, claiming that he had not

---

* Circuit Judge, sitting on the Court of Appeals by assignment.

stated a valid defense and that there is no genuine issue of material fact. The motion was denied and the bank appeals on leave granted.

In his answer to the complaint Holland admitted execution of the guaranty agreement but denied "any inference that said guaranty is the only instrument or agreement pertinent to such guaranty being issued". His answer also states a counterclaim; he alleged that in connection with the execution of the guaranty and to secure him against possible loss the bank agreed that his signature would be required on all checks issued against the borrower's commercial checking account with the bank, and that pursuant to this agreement a signature card was signed by William J. Kahlich and Holland.

Holland further alleged that subsequently William J. Kahlich signed a new signature card providing for the countersignature of his wife and that thereafter the bank paid checks not countersigned by Holland.[1] Holland claims that when he learned this he complained to a bank officer and was informed that until the matter was resolved no further checks would be cleared against the account, in which there was then a balance of approximately $8,000. Nevertheless, Holland claims that these funds were later paid out without his authorization.

Neither the bank's motion for summary judgment nor the supporting affidavit challenges the factual allegations in Holland's answer and counterclaim. Holland responded to the motion for summary judgment by admitting liability under the guaranty but denying that he was liable in the amount stated. He reasserted the allegations in the counterclaim regarding "the establishment of the dual signature

---

[1] It appears from a photocopy of a signature card in the record that Mrs. Kahlich may have signed the signature card previously signed by her husband and Holland. This signature card provided that two signatures were required on each check.

checking account and the guaranty by the bank to hold the approximate sum of $8,100 after notice [and contended that this] constituted the establishment of a constructive trust" and that there was a genuine issue of material fact concerning the amount of his indebtedness to the bank.

The bank contends that the parol evidence rule bars admission of testimony in support of Holland's claim that the bank agreed that his signature would be required on all checks drawn against the borrower's checking account. The bank additionally contends that since Holland had no interest in the funds in the borrower's bank account he has no standing to ask that a constructive trust be established in respect to such funds.

Holland's claim of a constructive trust is, we think, a clear misnomer. A constructive trust arises by operation of law. It is a remedial device "through which the conscience of equity finds expression".[2] It does not depend on the agreement or intention of the parties.[3] Professor Scott writes that, "A constructive trust arises where a person holding title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it. * * * *A constructive trust is not based upon the intention of the parties* but is imposed in order to prevent one of them from being unjustly enriched at the expense of the other". 5 Scott on

[2] *Beatty* v. *Guggenheim Exploration Co.* (1919), 225 NY 380, 386 (122 NE 378).
[3] *Kent* v. *Klein* (1958), 352 Mich 652, 656; *Digby* v. *Thorson* (1948), 319 Mich 524, 539; *Stephenson* v. *Golden* (1937), 279 Mich 710, 740; *Union Guardian Trust Co.* v. *Emery* (1940), 292 Mich 394, 404; *McCreary* v. *Shields* (1952), 333 Mich 290, 294; *Transamerican Freight Lines, Inc.* v. *Quimby* (1968), 381 Mich 149, 170, 171 (per BLACK, J); 22 Michigan Law and Practice, Trusts, § 51, p 564; Bogert, Trusts (2d ed), § 55, p 194; Restatement, Restitution, § 160, comment b, p 642.

Trusts (3d Ed), § 462.1, p 3415.    (Emphasis supplied.)

Holland relies on an express agreement.  He does not claim that the bank unjustly enriched itself when it honored directions from the Kahlichs to pay funds in the checking account without Holland's signature.

The trial judge did not clearly err in ignoring this misnomer.  It is apparent, both from Holland's answer to the complaint and his answer to the motion for summary judgment, that he was relying on an express agreement.[4]

We now address ourselves to the bank's contention that the alleged oral agreement regarding Holland's countersignature may not be proved because of the parol evidence rule.   Under the parol evidence rule, a writing that has been adopted as a complete integration of the terms of a contract may not be varied by evidence of negotiations or understandings that preceded its adoption.[5]  However, implicit in the premise that the rule applies only to the extent the writing has been adopted as a *complete* integration is the concept that contracting parties can agree to reduce some provisions to written form and leave others unwritten, trusting the latter to oral expression.[6]

Since a writing cannot prove its own completeness, parol testimony is admissible to show the circumstances under which an agreement was made:

---

[4] *Cf. Detroit Trust Co.* v. *Hartwick* (1936), 278 Mich 139, 144, 145.

[5] 3 Corbin on Contracts, § 573, p 357.

That the terms of a written guaranty cannot be varied by parol, see *St. Joseph Valley Bank* v. *Napoleon Motors Co.* (1925), 230 Mich 498; *Morris & Co.* v. *Lucker* (1909), 158 Mich 518; *State National Bank of Albuquerque* v. *Wernicke* (1915), 185 Mich 281; *Richard* v. *Lee* (1919), 205 Mich 92; *R. L. Polk Printing Co.* v. *Smedley* (1908), 155 Mich 242; Contrast *R. L. Polk Printing Co.* v. *Smedley* (1908), 155 Mich 249; *National Building Supply Co.* v. *Spencer* (1920), 211 Mich 228; *The Columbus Sewer Pipe Co.* v. *Ganser* (1885), 58 Mich 385.

[6] 3 Corbin on Contracts, § 581, pp 440, 441.

"The very testimony that the 'parol evidence rule' is supposed to exclude is frequently, if not always, necessary before the court can determine that the parties have agreed upon the writing as a complete and accurate statement of terms.  The evidence that the rule seems to exclude must sometimes be heard and weighed before it can be excluded by the rule." 3 Corbin on Contracts, § 582, p 450.

We recently said:

"The parol evidence rule is not designed to preclude proofs of other agreements between the parties not expressed in the writing or inconsistent therewith."  *S. F. A. Studios, Inc.* v. *Docherty* (1968), 12 Mich App 170, 173.[7]

The principle that parol evidence is admissible to show a separate agreement when the writing relied on represents a partial, not a complete, integration of the entire agreement is applicable to contracts of guaranty as well as other contracts.[8]

In *Piasecki* v. *Fidelity Corporation of Michigan* (1954), 339 Mich 328, the plaintiffs had assigned the mortgagee's interest in personal property to the defendant and had in writing guaranteed payment to the defendant of the secured indebtedness.  The rights of other creditors intervened before the mortgage and the assignment were recorded.  The plaintiffs commenced the action to recover for the diminution of the security and increase in their exposure to liability to the defendant caused, they said, by the defendant's breach of a duty to record the papers.  The Michigan Supreme Court held that the

---

[7] Similarly, see *Massachusetts Bonding & Insurance Co.* v. *Transamerican Freight Lines, Inc.* (1938), 286 Mich 179, 198; *Brady* v. *Central Excavators, Inc.* (1947), 316 Mich 594, 608; *Martin* v. *Miller* (1953), 336 Mich 265, 276, 277; *Beld* v. *Darst* (1906), 146 Mich 143; *Stahelin* v. *Sowle* (1891), 87 Mich 124; *Antonoff* v. *Basso* (1956), 347 Mich 18, 27.

[8] See Anno:  Parol evidence rule as applied to written guaranty, 33 ALR2d 960, 979, § 9, and cases there cited.

plaintiffs should be allowed to prove by parol evidence that the parties intended that the defendant (the party guaranteed) would have the obligation of promptly recording the papers.

We are in agreement with the trial judge that the question whether the written guaranty was adopted by the parties as a complete integration of their agreement could not be resolved without hearing the testimony of the parties. He therefore properly denied the motion for summary judgment.[9]

The bank's reliance on *Reyburn* v. *Goodrich* (1940), 292 Mich 91, is misplaced. There the defendant guarantor sought to prove that the plaintiff (the person guaranteed) had orally *obligated* himself to sell pledged collateral upon default in payment of the guaranteed note in the face of a provision in the written pledge agreement *authorizing* the plaintiff to do so. Here, in contrast with the cited case, Holland does not seek to establish an agreement inconsistent with any provision in the written guaranty, but rather to show a separate agreement regarding the disbursement of funds from the borrower's checking account.[10]

The bank further claims that there is a provision in the guaranty agreement relieving it of responsibility for paying funds from the checking account. The provision relied on reads:

---

[9] Plaintiff's motion for summary judgment and supporting affidavit do not assert the absence of a genuine issue of material fact regarding Holland's countersignature claim. He had, thus, no obligation to show in his answering affidavit that there was a genuine factual issue whether such an agreement was entered into. See *Hollerud* v. *Malamis* (1969), 20 Mich App 748, 762, 763.

[10] The Supreme Court ruled that the claimed oral agreement was inconsistent with the provision in the note which recited that the security was pledged "with authority to sell same" because there is a marked difference between such an "authorization" and an agreement that the obligee "*shall* sell the collateral upon default in payment." (Emphasis by the Court.) Contrast: *Piasecki* v. *Fidelity Corporation of Michigan, supra,* p 331.

"Failure of bank to preserve any rights which it may have in, or to any collateral security shall not constitute a defense hereunder to any claim against the undersigned."

Apart from the fact that it has not been shown by affidavit or otherwise that the funds in the checking account were collateral security for the payment of the borrower's indebtedness to the bank, Holland's counterclaim and defense is not based on the bank's failure to preserve any right which it may have in collateral or to resort to the funds in the account for the payment of the indebtedness. Rather it is Holland's claim that the bank permitted this asset of the corporation to be depleted without his authorization in violation of an express agreement.

It may be, as the bank contends, that the alleged agreement relied on by Holland would be inconsistent with its contractual obligations to its customer, the borrower. However, such a conflict does not preclude the possibility that it, nevertheless, entered into the claimed competing agreement with Holland.

Affirmed. Costs to defendant Holland.

All concurred.